IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00278-NRN

C.P.,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[1]

Defendant.

**OPINION AND ORDER**

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff C.P.[2] was not disabled for purposes of the Social Security Act. AR[3] 30. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #10.

---

[1] Martin O'Malley became the Commissioner of Social Security ("Commissioner") on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[3] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##9, and 9-1 through 9-8.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence. *See Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) ("If [plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007).

If the correct legal standards were applied and substantial evidence supports the findings of the Commissioner, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

**I.   Procedural History**

Plaintiff filed claims for Disability Insurance Benefits and Supplemental Security Income Benefits on November 18, 2020, alleging a disability onset date of February 15, 2020, and alleging disabling conditions of Crohn's disease, bipolar disorder, and tension headaches. AR 69, 86. Plaintiff's claims were initially denied on June 8, 2021, and denied again upon reconsideration on October 19, 2021. *Id.* at 83, 100, 116, 132. Plaintiff then requested a hearing by an ALJ, which was held on June 23, 2022. *Id.* at 38. Following the hearing, the ALJ denied Plaintiff's claims on August 12, 2022. *Id.* at 17–30. On September 15, 2022, Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 219–21. The Appeals Council denied review on December 16, 2022. *Id.* at 1–6. Plaintiff then filed this case.

## II.   The ALJ's August 12, 2022 Decision

At the second step of the Commissioner's five-step sequence for making determinations,[4] the ALJ found that Plaintiff had the severe impairments of Crohn's disease and depression. *Id.* at 20. The ALJ also determined that Plaintiff had nonsevere impairments including headaches, mild obesity, and milia eye lid of the left eye, and non-medically determinable impairments of left hand numbness and pain of the left knee and wrist. *Id*.

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1. AR 20–22. Because he concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can understand, remember, and carry out more than simple but less than complex tasks that can be learned and mastered in up to six months' time or less. She can tolerate frequent changes in workplace routine. The work allows for easy access to a bathroom (i.e., no outdoor field work, or over the road work).

---

[4] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

*Id.* at 22–23.[5]

In determining the RFC, the ALJ considered Plaintiff's testimony regarding her symptoms, including abdominal pain, nausea, fatigue, and frequent diarrhea, having over eight bowel movements a day on an unpredictable basis related to severe abdominal impairments; and depressed moods, irritability, fatigue, impaired sleep, crying spells, social withdrawal, and impaired concentration related to her history of depression. *Id.* at 23.

The ALJ considered Plaintiff's medical record regarding her mental[6] and abdominal impairments. The ALJ noted that Plaintiff was diagnosed with Crohn's disease and had a small bowel resection in 2012. *Id*. The ALJ noted that Plaintiff had multiple normal abdominal exams in February 2020, May 2020, July 2020, October 2020, and May 2022. *Id.* at 24–25. Similarly, exams in November 2020, January 2021, and March 2021 showed that Plaintiff had a soft, non-tender, non-distended abdomen with normal bowel sounds and no rebound or guarding. *Id.* at 24. However, abdominal exams were less positive in March 2020 (tenderness in lower left abdominal quadrant), September 2020 (mild abdominal tenderness), May 2021 (decreased breath sounds in all four quadrants, tenderness in her right lower quadrant, though abdomen was soft

---

[5] 20 CFR 404.1567(b) defines "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

[6] Because Plaintiff does not raise claims about the ALJ's evaluation of Plaintiff's mental impairments, the Court does not address them further.

5

and non-distended, and had no masses), December 2021 (mild abdominal tenderness), and May 2022 (Plaintiff hospitalized with abdominal pain, and an exam showed abdominal tenderness, but no rebounding or guarding, and unremarkable lab results). *Id.* at 24–25.

The ALJ relayed other medical evaluations, treatment, and Plaintiff's reported symptoms regarding her abdominal impairments. In November 2019, Plaintiff had an EGD and biopsy suggesting mild diffuse colitis, and her doctor described the impairment as without complications. *Id.* at 23. In January 2020, she was admitted to the hospital due to abdominal pain and prescribed steroids due to a Crohn's flare up. *Id.* A colonoscopy showed mucosa in Plaintiff's stomach, normal esophagus, and normal duodenum. *Id.* Stomach biopsies showed inflammation and mildly active enteritis. *Id.* Plaintiff reported moderate symptoms and feeling better in a follow up exam. *Id.* In February 2020, Plaintiff reported that she was doing o.k., and that she had not been able to start new medications. *Id.* at 23–24. Plaintiff did not report frequent bowel movements at a March 2020 gynecological exam, which showed a normal perineum with no redness or inflammation. *Id.* at 25. By May 2020, Plaintiff had started her new medications, including Stelera, and her doctor described the impairment as without complications. *Id.* at 24–25. In July 2020, Plaintiff reported improved fatigue and that her digestive symptoms were under good control. *Id.* at 24. But in October 2020, Plaintiff reported worsening symptoms. *Id.* Dr. Kowalczyk noted Plaintiff appeared to have lost response to Stelera. *Id.* at 25. Dr. Nguyen's November 2020 exam showed Plaintiff was not in acute distress and walked with a normal gait. *Id.* Plaintiff was advised to quit smoking because it could reduce the effectiveness of her medications. Later that month,

she was re-induced with IV medication. AR 24. She was also prescribed Colestid in November 2020, but in January 2021, Plaintiff reported she had stopped taking the Colestid because she felt that it was not allowing her antidepressant medication to be absorbed. *Id.* at 25. A February 2021 colonoscopy showed Plaintiff had six ulcers in the terminal ileum and diverticulosis, but that her entire colon was normal, and there was no evidence of recent or active bleeding. *Id.* at 24. In a May 2021 consultative physical evaluation, Plaintiff was reported to be pleasant, in no acute distress, appeared comfortable, did not appear fatigued, was able to get on and off the exam table, and ambulated normally. *Id.* Plaintiff reported continuing to experience abdominal pain, nausea, fatigue, and bleeding from hemorrhoids. *Id.* In January 2022, Plaintiff reported intermittent abdominal pain. *Id.* An exam showed a soft, non-tender, non-distended abdomen with normal bowel sounds. *Id.* A colonoscopy showed moderate diverticulosis, Crohn's disease with ileitis, hemorrhoids, and no evidence of bleeding. *Id.* Biopsies were unremarkable besides one area of mild chronic ileocolitis. *Id.*

The ALJ also recognized Plaintiff's reported daily frequency of bowel movements in November 2019 (four), February 2020 (five to ten), May 2020 (five to ten, and later that month, one), October 2020 (eight to twelve), January 2021 (three to four), March 2021 (four to six), January 2022 (eight to ten). *Id.* at 23–24. In February 2022, Plaintiff completed a diary of her bowel movements showing "some days of 8-10 bowel movements, but also noted days where she had 2-5 bowel movements, with 3-5 hours in between bowel movements." *Id.* at 24–25.

Regarding Plaintiff's daily activities, the ALJ observed that Plaintiff reported being able to take care of personal care and hygiene, care for a pet, shop in stores, drive,

7

walk to get around, socialize with others, prepare meals, handle her finances, knit, crochet, work on crafts, clean her home, do laundry, perform home repairs, garden, and mow her lawn. *Id.* at 27.

    The ALJ ultimately concluded that although Plaintiff should be restricted to "work [that] allows for easy access to a bathroom, involving basically indoor work where access to a bathroom is readily accessible, and thus no outdoor field work or over the road work," she also found that "while [Plaintiff] has Crohn's, there is no support for her allegations regarding the frequency of bowel movements." *Id.* at 25, 29. In support of this finding, the ALJ stated that the overall record reflects positive exam findings, that Plaintiff's bowel movement frequency decreased from five to ten times per day down to one per day after starting Stelara in May 2020, and that Plaintiff was not totally compliant with treatment because she discontinued Colestid on her own and continued to smoke after being advised to quit. *Id.* at 25. The ALJ also summarized that doctors often described her impairments as without complications, that Plaintiff reported fewer bowel movements and improved symptoms with treatment at several exams, that colonoscopies showing remarkable findings were often only mild to moderate and showed no severe findings or active bleeding, that Plaintiff's weight increased slightly and "one would expect weight loss with the extreme frequency of bowel movements the claimant reported." *Id.* at 27. The ALJ noted that Plaintiff's bowel movement diary "was not fully inconsistent with work" because many days showed six or fewer bowel movements with four or more hours between bowel movements, "which could allow for a bathroom break at normally acceptable intervals." *Id*. Lastly, the ALJ explained that

Plaintiff's treatment was relatively routine and conservative, and there was not evidence that she required hospitalization during the relevant period. *Id.*

The ALJ then considered medical opinions and prior administrative medical findings. At issue in this case are the opinions of Dr. Kristina Barber and Dr. Lukasz Kowalczyk. Dr. Barber opined that Plaintiff had no physical limitations but needed to be allowed to use the bathroom several times per hour. *Id.* at 28. The ALJ found this opinion unpersuasive and not well supported as it was based on Plaintiff's reported bathroom use and not objective medical evidence, and Plaintiff did not consistently report using the bathroom multiple times per hour. *Id.* at 28–29. Dr. Kowalczyk opined that Plaintiff was disabled due to the frequency of her bowel movements. *Id.* at 29. The ALJ also found this opinion unpersuasive and not well supported as Dr. Kowalczyk did not reference objective medical findings; his examinations did not contain evidence consistent with his opinion; his opinion did not contain functional limitations; Plaintiff's disability was an issue reserved for the Commissioner; and the opinion was not consistent with Plaintiff's daily activities, reported improved symptoms, and normal abdominal exams. *Id.*

At step four, the ALJ found that Plaintiff had past relevant work as a receptionist and cashier. *Id.* at 30. The VE testified that someone with the same vocational profile and limitations as Plaintiff could perform the job of receptionist, as actually and generally performed in the national economy, and cashier, as generally performed in the national economy. *Id*. The ALJ found that Plaintiff was able to perform the jobs of receptionist and cashier, and accordingly, determined that Plaintiff was not disabled. *Id*.

## Analysis

First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and contains legal error because it failed to include limitations corresponding to Plaintiff's Crohn's disease, and that the RFC determination relies on misstatements and illogical conclusions regarding Plaintiff's subjective complaints, thereby failing to account for the "crux" of Plaintiff's ailment—the *urgency*, *frequency*, and *duration* of her bathroom visits. Plaintiff next argues that the ALJ's failed to properly evaluate the opinions of Dr. Barber and Dr. Kowalczyk in formulating the RFC. The Court begins by addressing the first argument, which is dispositive.

**I.   RFC Limitations Related to Crohn's Disease**

Here, the ALJ determined that Plaintiff's Crohn's disease constituted a severe impairment. A severe impairment is one that, by itself or in combination with other impairments, "significantly limits [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In formulating a claimant's RFC, an ALJ is obligated to "consider the limiting effects of all the claimant's impairments." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (cleaned up). A claimant's RFC "is the most [she] can do despite [her] limitations," and "is based on all the relevant evidence." *Rivera v. Comm'r, SSA*, No. 22-1026, 2022 WL 17333068, at *5 (10th Cir. Nov. 30, 2022). The assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).

Plaintiff first argues that the RFC contained legal error because it failed to contain a limitation related to her severe impairment of Crohn's disease. Although the RFC states that Plaintiff must have "easy access to a bathroom (i.e., no outdoor field work, or

over the road work)," Plaintiff argues that this is not a real limitation because all indoor jobs must have restroom access—jobs without bathroom access are the exception to the rule. (Dkt. #13 at 11.) The Commissioner counters that the requirement of easy bathroom access and exclusion of outdoor field work and over the road work does constitute a limitation associated with Crohn's disease, as it prevents Plaintiff from being considered for outdoor and over the road jobs, and that the ALJ's limitation to light work was also related to Crohn's disease, as it was associated with Plaintiff's abdominal tenderness and colon inflammation. (Dkt. #14 at 10–11, 17.)

Regarding Plaintiff's first argument the Court finds that the RFC contains limitations clearly related to Plaintiff's Crohn's disease. Some occupations in the Dictionary of Occupational Titles involve outdoor field work and over the road work, and the RFC eliminates those jobs for Plaintiff because of her severe impairment of Crohn's disease.

Plaintiff further argues that the RFC's limitations do not properly address "the crux" of her Crohn's disease—the urgency, frequency, or duration of her bathroom breaks—while the record contains lengthy evidence on these issues which is uncontradicted by any report, statement, or medical note. (*Id.* at 11–12.) Here, Plaintiff argues that the RFC is not supported by substantial evidence because it does not properly account for the limitations caused by Plaintiff's Crohn's disease. The Commissioner counters that the ALJ determined, after consideration of the entire record, that limitations in these areas were not proper. The Commissioner argues that the ALJ adequately explained why objective medical evidence, Plaintiff's daily activities,

frequency of symptoms, treatment, lack of weight loss, and other factors undermined Plaintiff's reported symptoms. (Dkt. #14 at 12.)

Based on a complete review of the record, the Court concludes that the RFC limitations (or lack thereof) are not supported by substantial evidence. To the contrary, substantial evidence would mandate the imposition additional limitations related to the frequency, urgency, and duration of Plaintiff's bowel movements. First, neither the ALJ nor the Commissioner explain why normal abdominal examinations, colonoscopies with mild to moderate findings, or a medical finding of Crohn's disease "without complication" would undercut Plaintiff's reported symptoms regarding the urgency, frequency, and duration of her bowel movements. It is not obvious to the Court, nor is it explained in the record, why such medical evidence is somehow inconsistent with Plaintiff's reported bathroom usage. Accordingly, the Court cannot follow the ALJ's reasoning in deciding to give less weight to Plaintiff's reported bathroom limitations based on these medical reports, especially in the context of other medical reports which found that Plaintiff had little notice of when she must use the bathroom, and that Plaintiff's Crohn's disease would necessitate multiple bathroom breaks per hour. *See* AR 655, 796; *Keyes-Zachary*, 695 F.3d at 1166.

Similarly, the Court is unable to follow the ALJ's reasoning in determining that, because Plaintiff reports being able to perform certain household chores and activities around her home or travel to the grocery store, her testimony regarding urgency, frequency, and duration of bathroom use is less persuasive. The ALJ did not explain the connection, while the Plaintiff testified that she knits and crochets while in the bathroom,

that her household work takes longer due to her frequent bathroom use, and that she is able to drive as long as she knows where the nearest bathroom is. AR 51, 54, 55.

Lastly, the ALJ does not adequately explain why Plaintiff's March 2020 gynecological exam results and body weight measurements support the ALJ's finding that "there is no support for her allegations regarding the frequency of bowel movements." AR 25. An ALJ may not substitute her own medical opinion for the opinion of a doctor. *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016). While Plaintiff's March 2020 gynecological exam indicated a normal perineum, it was the ALJ's determination (not a doctor's) that this normality constituted "no evidence that [the perineum] was inflamed or red from frequent bowel movements and the need to wipe," indicating that the Plaintiff was not having frequent bowel movements. AR 25. Similarly, the ALJ determined that Plaintiff's reports of frequent bathroom usage were unsupported because Plaintiff did not lose weight, and "one would expect" weight loss with such frequent bowel movements. AR 27. The ALJ cites no medical evidence in support of this supposition.

The remaining reasons that the ALJ provides for determining that the evidence was inconsistent with Plaintiff's claims regarding bathroom use does not amount to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Plaintiff did not require further RFC limitations regarding the urgency, frequency, and duration of bathroom usage. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020). When considering the entire record, the fact that Plaintiff's documented month of bowel movements showed ten days with six or fewer bowel movements, and that her treatment was relatively routine and conservative, does not

permit the Court to affirm that the RFC limitation is supported by substantial evidence. *See Pace v. Colvin*, No. 16-cv-00007-RBJ, 2016 WL 7383404, at *9–10 (D. Colo. Dec. 21, 2016) (RFC requiring that claimant has "normal breaks" was not supported by substantial evidence where "record is rife with reports that [claimant] has to use the restroom more often and for more time than a normal person," even where claimant had at times reported that her bowel issues were manageable).

Plaintiff's ability to work is dramatically impacted by the frequency of her required bathroom breaks*. Cocozza v. Colvin*, No. 13-cv-02331-WYD, 2014 WL 4855038, at *6 (D. Colo. Sept. 29, 2014)*.* As in *Pace,* "[t]he ALJ's RFC assessment should address [Plaintiff's] actual need for bathroom breaks. If necessary, the ALJ should develop the record to determine exactly how often and for how long [Plaintiff] needs these unscheduled breaks." 2016 WL 7383404, at *10.

## II.   Remaining Issues

The Court "address[es] only so much of Plaintiff's arguments as are sufficient to require reversal." *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014). The Court expresses no opinion as to Plaintiff's remaining arguments, and neither party should take the Court's silence as implied approval or disapproval of the arguments. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (reversing and remanding after concluding the ALJ did not apply the correct legal standards in considering a treating physician's opinion, and declining to consider remaining issues raised by the claimant "because they may be affected by the ALJ's treatment of this case on remand"). The Court also does not suggest a result that should be reached on remand; rather, the Court encourages the parties, the ALJ, and the Commissioner on

remand to consider fully and anew the evidence and all issues raised. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

Dated this 23rd day of February, 2024.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge